[No. 52222-7. En Banc. July 3, 1986.]

RAY O. BURLINGAME, ET AL, *Plaintiffs,* v. CONSOLIDATED MINES AND SMELTING COMPANY, LTD., *Appellant,* THE ESTATE OF HUGH D. BROWN, *Respondent.*

*Jan Elizabeth Brucker,* for appellant.

*Ernest L. Meyer,* for respondent.

UTTER, J.—The court below vacated a judgment of contempt entered against Hugh D. Brown, a former president of Consolidated Mines and Smelting Co., Ltd., on the grounds that a show cause order did not provide adequate notice of the contempt proceedings. We reverse and hold the show cause order satisfied due process by providing notice of (1) the time and place of the hearing, and (2) the nature of the charges.

Consolidated Mines and Smelting Co., Ltd., was a Washington corporation incorporated in 1930. Hugh Brown assumed a role in the management of the company in 1953, and served as company president from as early as 1962.

The activities of the company from the 1960's through the 1970's are not clear. In 1965 Mr. Brown sued the company in his individual capacity, failed to defend the company in his representative capacity, and obtained a default judgment for $17,480. Apparently in 1970 the company lost the right to continue mining some of its claims. In 1980 three shareholders petitioned the court for liquidation of the assets of the company and for appointment of a liquidating receiver. The shareholders alleged that shareholders had not received notice of an annual shareholder meeting for more than 3 years and that shareholders had been unable to elect successor directors during this time; that shareholders were unable to contact the company through its registered agent, Hugh Brown; that Brown had wasted the corporate assets; that Brown had wrongfully converted

corporate funds to his personal use; and that the corporation's charter would expire in 1980 according to the articles and that no shareholder meeting had been called to amend the articles.

On March 20, 1980, Judge Henry entered an order appointing David Barber as Receiver Pendente Lite. The order included a provision directing all officers and directors and any others in possession of company records to deliver them to the receiver immediately. The order also enjoined the officers and directors from conducting any company business. A full hearing on the matter was set on May 5, 1980.

On March 30, 1980, a copy of the order was served personally on Hugh Brown at his home address in Los Angeles, California. Brown failed to comply with the order. According to an affidavit by an attorney for the receiver, Brown told the attorney that he would deliver the company records only when he was "good and ready" to do so. Clerk's Papers, at 21–22.

On April 11, 1980, the receiver instituted a motion for an order to show cause why Brown should not be held in contempt of court for his failure to comply with the March 20 court order. In support of the motion the receiver submitted to the court an affidavit of the former secretary of the company. The secretary alleged that she had been a close personal friend of Mr. Brown's, that Mr. Brown had always stored the company records in his home, and that she had observed some of the records in 1981 during her last visit to his home. The court granted the order, signed an Order for Warrant for Contempt, and issued a Bench Warrant for Brown's arrest. The judge also scheduled a show cause hearing on April 28, 1980.

On April 19, 1980, Mr. Brown was personally served in California with the court's order. The Proof of Service lists eight documents that were served: (1) motion for order to show cause; (2) affidavit in support of motion for order to

show cause; (3) order to show cause;[1] (4) order for warrant for contempt; (5) bench warrant; (6) affidavit of out-of-state personal service; (7) exhibits B through L (that demonstrate that Brown was the registered company president); and (8) "Judgment for Contempt." Clerk's Papers, at 47. The record of this court contains copies of the first seven documents. However, the only copy of a "Judgment for Contempt" that this court has is a copy of the actual judgment signed by Judge Henry on April 28, 1980.

The show cause hearing was held on April 28, 1980. The court waited over an hour for Brown, who did not appear. Judge Henry then signed a judgment for contempt against Brown that provided for: (1) confinement in jail and a fine of $100 per day until Brown complied; (2) $8,000 for attorneys' fees; (3) $50,000 for indemnity to the receiver and the company "for damages suffered as a result of said Hugh D. Brown failing to obey" the court's order; and (4) $350 for costs and disbursements. Clerk's Papers, at 48–53.

On May 5, 1980, the court held the hearing on the original petition of the shareholders. The court signed an order appointing Barber as liquidating receiver for the corporation.

On September 25, 1980, the court received a letter from Mr. Brown. Brown reported that he had arranged for appearance of counsel at the show cause hearing, but that his attorney failed to appear. Brown further stated that "I seek to have this unjust situation corrected and the judgment against me dismissed." Clerk's Papers, at 63. The court did not act on the letter.

On July 12, 1982, Mr. Brown died. The liquidating

---

[1]The order to show cause reads in part:

"Now, therefore, it is hereby ordered, that the said Hugh D. Brown, be, and he hereby is, required to appear on the 28th day of April, 1980 at 9:00 a.m. at the Courthouse in Olympia, Washington to show cause, if any he may have, why he should not be adjudged in contempt of Court for his failure to comply with the aforementioned Order requiring him to forthwith deliver all property of the defendant herein forthwith to the receiver pendente lite for defendant herein.

"Done in open court this 11th day of April, 1980." Clerk's Papers, at 37.

receiver subsequently filed a claim against Brown's estate in the Superior Court for Los Angeles County. On March 19, 1984, counsel for Brown's estate attacked the contempt of court judgment by filing a motion for order vacating judgment in Thurston County Superior Court. Brown's estate argued that (1) the court had lacked personal jurisdiction over Brown while Brown was in California, and (2) the show cause order served on Brown failed to inform him that failure to attend the show cause hearing could result in entry of a judgment against him, and thus failed to satisfy due process requirements for a valid judgment. In an oral opinion on April 23, 1984, Judge Doran concluded that (1) Washington's long–arm statute gave the court personal jurisdiction over Brown; (2) the show cause order failed to satisfy the due process requirements of adequate notice; and (3) the record contained inadequate evidence to sustain the court's award of compensatory damages against Brown. The court vacated the judgment for contempt of April 28, 1980. The company appealed the court's vacation of the contempt order to Division Two of the Court of Appeals, and the Court of Appeals transferred the case to this court.

This court has held that until adequate "notice . . . actual or constructive . . . is given, the court has no jurisdiction in any case to proceed to judgment". *Ware v. Phillips,* 77 Wn.2d 879, 882, 468 P.2d 444 (1970) (quoting *Hovey v. Elliott,* 167 U.S. 409, 414–15, 42 L. Ed. 215, 17 S. Ct. 841 (1897)). Traditionally, however, minimal notice has satisfied due process requirements for a valid judgment of contempt of court. In *Hovey v. Elliott, supra,* the United States Supreme Court stated that the requirements of a valid contempt order are (1) notice, and (2) an opportunity to be heard. The Court emphasized that of these two requirements the most significant is the opportunity to be heard. The notice requirement is important only because it protects an individual's right to be heard. 167 U.S. at 415.

Courts have continued to rule that orders to show cause satisfy the notice requirement of due process. In 1925 the Washington court concluded that personal service of a show

cause order alone was sufficient to confer to the court jurisdiction over the accused contemnor. *State ex rel. Dunn v. Plese,* 134 Wash. 443, 235 P. 961 (1925). The court stated that:

> a service of the warrant of arrest or show cause order provided by statute is sufficient to give the court jurisdiction; provided, of course, the show cause order is in itself sufficient. Here it particularly notified the appellant that he was charged with violating a certain designated previous order of the court. We have no doubt the court had jurisdiction and power to try the case on its merits.

134 Wash. at 447.

Today, the rule in criminal contempt cases is that due process concerns are satisfied as long as the individual accused of contempt is notified of the time and place of the hearing and the nature of the charges. *See, e.g., Yates v. United States,* 316 F.2d 718 (10th Cir. 1963); *Ex Parte McNulty,* 678 S.W.2d 745 (Tex. Ct. App. 1984). Courts have reached the same conclusion in civil contempt cases. *See In re Sadin,* 509 F.2d 1252 (2d Cir. 1975); *Jacoby v. Jacoby,* 675 S.W.2d 117 (Mo. Ct. App. 1984). One court has declared that "[i]n a civil contempt case, due process requires that notice be given of the time and place of hearing. . . . [t]he purpose of the notice is to inform the contemnor of the nature of the charges and enable the contemnor to prepare a defense.'" *American Fletcher Mortgage Co. v. Bass,* 688 F.2d 513, 519 (7th Cir. 1982).

The order served on Mr. Brown satisfies the due process requirements established by these decisions. Brown was notified of the time and place of the hearing. The order particularly notified Brown that he was charged with violating a certain designated previous order of the court.

Brown's estate relies on *Ware v. Phillips, supra,* to argue that the notice should have notified Mr. Brown that the corporation, its receiver, and the shareholders were asking for judgment against him for damages, attorneys' fees, and costs. In *Ware v. Phillips, supra,* this court relied on *Hovey v. Elliott, supra,* to hold that a writ of garnishment pro-

vided insufficient notice to satisfy due process. The writ served on the garnishees in that case simply ordered them to appear. This court concluded that "[t]he flaw in the writ . . . is that no notice was provided that a claim was being asserted against the garnishees or that a judgment might be taken against them if they failed to answer." 77 Wn.2d at 883.

This case is distinguishable from *Ware v. Phillips, supra.* In this case the order's language that Brown show cause "why he should not be adjudged in contempt of Court" provides notice of both a claim and the possibility of judgment. The term "adjudged" connotes that a judgment, punishment, sentence, or award was sought to be imposed. *See Webster's Third New International Dictionary* (1976).

■ Moreover, a contempt of court proceeding is unique, and it is the nature of a proceeding that determines what process is "due." This court has said that "while the minimal requisites of due process are definite, their form may vary according to the exigencies of the particular situation", and that "[t]he procedural safeguards afforded in each situation should be tailored to the specific function to be served by them." *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 423, 511 P.2d 1002 (1973).

The function of notice in a civil proceeding varies significantly from the function of notice in a contempt of court proceeding. In a civil proceeding a private party initiates the action, and the court acts merely to enforce the rights of that party. The service of a summons and complaint as required by CR 3 is the court's only guaranty that the defendant knows a court proceeding has been initiated and the extent of the claim asserted. In contrast, the contempt of court power is available only against individuals who are already aware of the existence and nature of a proceeding. The contempt of court power is used by courts to enforce or punish violations of a court order or judgment and to prevent or punish unlawful interference with the proceedings of a court. *See* RCW 7.20.010; *State v. Boatman,* 104 Wn.2d 44, 700 P.2d 1152 (1985). Notice therefore is not as

crucial as it is in the initiation of a civil proceeding.

The function of notice in a contempt of court proceeding is more analogous to the function of notice in a criminal proceeding. A party accused of a crime has no choice about whether to appear. *See* CrR 2.2. Similarly, a party accused of contempt of court has no choice whether to appear. *See* RCW 7.20.040. A show cause order is an order that the accused must appear to answer the charge of disobedience of the court's order.

For these reasons, a party accused of contempt of court need not be provided the same type of notice as is provided the defendant in a civil proceeding. The law does not require the defendant in a civil proceeding to appear. In a contempt proceeding the accused must appear, however, just as the accused must appear in a criminal proceeding. In a criminal proceeding due process requires only that an accused be notified of the charge against which to defend at trial. *See State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984); *Kreck v. Spalding,* 721 F.2d 1229 (9th Cir. 1983). We agree with *Hovey v. Elliott, supra,* and *State ex rel. Dunn v. Plese, supra,* that in a contempt proceeding notice is sufficient as long as it informs the accused of the time and place of the hearing and the nature of the charges pending.

The company also argues that the trial court's judgment should be reversed because (1) the "Judgment for Contempt" document served on Brown provided actual notice of the damages sought, and (2) Brown failed to appeal the judgment of contempt. Both arguments can serve as grounds for reversal. *See, e.g., In re Sadin,* 509 F.2d 1252 (2d Cir. 1975) (actual notice satisfies due process); *Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc.,* 68 Wn.2d 756, 415 P.2d 501 (1966) (direct appeal is the proper means to remedy legal errors). In light of our conclusion that the show cause order provided sufficient notice, however, we do not need to reach either issue.

As an alternative reason for setting aside the contempt judgment of April 28, 1980, the court below con-

cluded that insufficient evidence supported the judgment. Report of Proceedings, at 41–42. This conclusion exceeded the trial court's proper scope of inquiry. Relief from judgments and orders in both civil and criminal cases is governed by CR 60(b). *State v. Scott*, 92 Wn.2d 209, 595 P.2d 549 (1979); *State v. Sampson*, 82 Wn.2d 663, 513 P.2d 60 (1973). Civil Rule 60(b) does not authorize vacation of judgments except for reasons extraneous to the action of the court or for matters affecting the regularity of the proceedings. *Marie's Blue Cheese Dressing, Inc. v. Andre's Better Foods, Inc.*, 68 Wn.2d 756, 415 P.2d 501 (1966). Errors of law are not correctable through CR 60(b); rather, direct appeal is the proper means of remedying legal errors. *State v. Keller*, 32 Wn. App. 135, 647 P.2d 35 (1982); *see also Pamelin Indus., Inc. v. Sheen–U.S.A., Inc.*, 95 Wn.2d 398, 622 P.2d 1270 (1981). Here, insufficiency of the evidence is not an error that is extraneous to the action or affects the regularity of the proceedings.

The judgment of contempt of court was valid. The show cause order served on Hugh Brown satisfied constitutional requirements of due process. For these reasons, we reverse the court below.

DOLLIVER, C.J., and BRACHTENBACH, PEARSON, CALLOW, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I am disturbed by the cavalier manner in which the majority reinstates the judgment of contempt entered against Hugh Brown. I believe the notice given to the plaintiff was deficient, and that the trial court, in issuing the contempt order, exceeded its jurisdiction.

It is a fundamental principle of justice that an individual must receive adequate notice and an opportunity to be heard before a judgment can be entered against him. What constitutes adequate notice in any given situation sufficient to meet this due process requirement will vary. Thus, as the majority points out, "'[t]he procedural safeguards afforded

in each situation should be tailored to the specific function to be served by them.'" Majority opinion, at 334, quoting *Olympic Forest Prods., Inc. v. Chaussee Corp.*, 82 Wn.2d 418, 423, 511 P.2d 1002 (1973). If the procedural safeguards are inadequate, then the court lacks jurisdiction over the defendant and cannot enter a valid order against him. *See Ware v. Phillips*, 77 Wn.2d 879, 468 P.2d 444 (1970).

Furthermore, the notice given to a party being sued may limit a court's jurisdiction. A judgment for default cannot grant more relief than is alleged in the complaint. *Sceva Steel Bldgs., Inc. v. Weitz*, 66 Wn.2d 260, 401 P.2d 980 (1965).

> a defendant has a right to allow a default to be taken against him secure in the knowledge that the judgment or decree will not exceed the demand of the complaint. The principle upon which such a rule rests is that the court is without jurisdiction to grant relief beyond that which the allegations and prayer of the complaint may seek. If, upon the hearing of the matter before the court, the complaining party desires additional relief, or if the court feels that other or additional relief should be awarded, the defendant is entitled to have notice given to him and an opportunity to be heard on the merits thereof; otherwise, he is denied procedural due process of law in violation of § 3, Art. I, of our constitution.

*State ex rel. Adams v. Superior Court*, 36 Wn.2d 868, 872, 220 P.2d 1081 (1950).

When applying these principles to the case before us, it is clear that Hugh Brown did not have adequate notice of the contempt proceedings to justify an award of $50,000 damages. The action brought against Brown was for civil contempt of court to compel Brown to turn over certain corporate records. This type of contempt action is not designed to punish the offender, but rather, "to coerce him into obeying the mandate of the court." *Arnold v. National Union of Marine Cooks Ass'n*, 41 Wn.2d 22, 27, 246 P.2d 1107 (1952). A person accused of being in contempt of court receives a show cause order, requiring him to appear in

court, and explain "why he should not be adjudged in contempt of Court for his failure to comply [with the court order he allegedly has violated] . . ." See footnote 1. Appearance at this show cause hearing is mandatory; a defendant can be imprisoned for failure to comply with the show cause order. RCW 7.20.110.

A person receiving a show cause notice instituting a contempt proceedings must therefore contemplate the following penalties would result if he did not appear: (1) the court could hold the defendant in contempt, (2) the court could order the person imprisoned, (3) the court could impose a fine for failure to obey, with additional penalties for further disobedience, and (4) the party instituting the contempt procedure could receive indemnity for any damages caused by the contempt. See RCW 7.20.100. Any penalties a court may order in addition to the ones described exceed the court's jurisdiction, and are of no effect, because the defendant would not have any notice of the additional claims being asserted. Put another way, the aggrieved party cannot receive judgment on different or underlying claims giving rise to the contempt proceedings (except that necessary for indemnification) without violating the defendant's due process rights.

The corporation received damages of $50,000 and $8,000 attorney fees in the contempt order. There is absolutely no record of any evidence presented to the court entering the contempt order that the corporation suffered this amount of damages by Brown's failure to comply with the court's order. Report of Proceedings, at 43. There was neither an underlying action nor a default against Brown. Only 29 days had passed between the original demand on Brown to turn over the documents and the date the contempt order was entered. The corporation which had remained inactive and apparently conducted no business simply could *not* have required $50,000 for indemnification.[2] It is obvious

---

[2] I further question the correctness of an $8,000 attorney fee verdict. However, since the corporation doubtlessly spent a significant amount of attorney time

therefore that the $50,000 represented a judgment against Brown for an underlying action for damages relating to his questionable dealings with the corporation. It should not have been included in the contempt order.

The majority, however, holds that the amount of damages should be allowed. The majority claims that the question of how much actual damage was suffered cannot be challenged in this collateral attack to the contempt proceedings. Majority opinion, at 335. Such an attack, brought under CR 60(b), does not authorize vacation of a judgment for what the majority describes as a challenge to the sufficiency of the evidence.

This is clearly erroneous. As *no* evidence whatsoever was presented to show the corporation suffered this damage because of the contempt, and common sense unquestionably tells us that an inactive corporation did not suffer $50,000 injury for a 29–day failure to turn over corporate records, the question is not whether or not sufficient evidence justified such an order. Rather, the question is whether or not the court entering the contempt order had the jurisdiction to order damages in favor of a corporation far in excess of the amount of injury the corporation had suffered by Brown's contempt. Obviously it did not.

I therefore would hold that such an order was void for lack of jurisdiction. The notice given to Brown was patently inadequate to apprise him of the possibility of such a large damage award. The corporation impermissibly used the contempt order to obtain a judgment against Brown for an underlying cause of action.

I would affirm the holding of the second trial court vacating the earlier contempt order's award of $50,000 to the corporation. That award represents damages for a separate claim which was never filed against Brown. To allow such an award, as the majority does, transforms a contempt

---

instituting the civil contempt action, mere insufficiency of the evidence does not justify this court in disallowing the fees. CR 60(b). I would grudgingly allow this award.

proceeding into a decision for a wholly separate claim, without giving the defendant notice this will occur. I dissent to such a holding, as this transformation unquestionably violates the defendant's due process rights.

ANDERSEN and GOODLOE, JJ., concur with DORE, J.

Reconsideration denied August 28, 1986.