# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ALEXANDRA BRAATZ, | ) | No. 76577-9-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| MICHAEL BRAATZ, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: <u>March 19, 2018</u> |

SPEARMAN, J. — When the trial court issues a domestic violence protection order that meets certain statutory conditions, the court must also order the restrained person to surrender all firearms and other dangerous weapons. RCW 9.41.800(3). We are asked to determine the burden of proof that applies to an order to surrender weapons. We hold that the restrained person has the burden to prove by a preponderance of the evidence that they have surrendered their firearms and other dangerous weapons.

In this case, the trial court found that Michael Braatz had complied with an order to surrender weapons. Because the finding is not supported by substantial evidence, we reverse.

FACTS

Michael and Alexandra Braatz were married and lived in Oregon. They separated and Alexandra[1] moved to Washington, where she petitioned for a domestic violence protection order. Alexandra alleged that Michael had frequently assaulted her and threatened to shoot her. A commissioner found that Michael had committed domestic violence and entered a protection order. The commissioner ruled that she could not order Michael to surrender his weapons because the court did not have personal jurisdiction over him.

Alexandra moved to revise the commissioner's order and a hearing was held on January 4, 2017. Michael asked for a continuance to obtain counsel. He stated that he did not have any firearms in his possession because they were all secured with family members. Michael also stated that he was a strong believer in the Second Amendment to the United States Constitution and did not want to give up his guns unless it was legally proven that he should not have them. Alexandra disputed that Michael did not have any guns in his possession. She asserted that he had a pistol when he visited the children the previous weekend.

The court continued the hearing until January 18 and entered a temporary surrender weapons order. The order required Michael to immediately surrender his firearms, any other weapons, and any concealed pistol license to the local sheriff's office.

On January 11, Michael filed a proof of surrender form stating that he had surrendered the firearms in his possession. He attached a receipt showing that

---

[1] We refer to the parties by their first names for clarity. We intend no disrespect.

he turned in two handguns and one hunting rifle to the sheriff's office in Union County, Oregon.

At the hearing on January 18, the parties informed the court that they had prepared an agreed order and only needed the court's approval. The agreed order required Michael to surrender all firearms and other weapons but allowed him to surrender them in either Union or Lane County, Oregon. Michael's attorney explained that the remainder of Michael's guns were at his mother's house in Lane County, more than 350 miles from Michael's home in Union County. The court approved the agreed order and set a review hearing for February 1.

On January 30, Alexandra filed a declaration stating that, following a house fire in 2014, Michael stored his guns at an armory. She attached an email from Emerald Valley Armory containing an inventory list of 34 guns identified by make, model, and serial number. The three guns Michael had previously surrendered were included in the list.

At the review hearing on February 1, Michael's attorney stated that he had been unable to surrender his guns because the Lane and Union County sheriffs refused to accept them. Counsel asked the court to allow Michael to surrender the weapons by storing them in a safe to which only a third party had access.

Alexandra objected that the alternate arrangement was not secure, Michael had provided no information as to which or how many guns were in the safe, and he had thus far failed to account for 31 of the 34 guns on the 2014 inventory. Alexandra asserted that Michael was stalling and trying to circumvent the order to surrender weapons. She noted that Michael now admitted owning

3

many guns even though, on January 11, he represented that the three he surrendered were his only guns. Because the orders issued on January 4 and 18 warned that failure to comply could result in contempt and criminal charges, Alexandra asked the court to refer the matter to the prosecutor to initiate contempt proceedings.

In response, Michael argued that he had made good faith efforts to surrender the guns and a contempt action was not warranted. He asked the court to amend the order to allow him to surrender his weapons in King County, Washington and set a new review date.

The court noted that it only had argument from Michael's counsel that Michael had tried to surrender his guns. The court found Michael not in compliance, granted Michael's request to amend the order, and set a review hearing for February 15. The court declined to refer the matter to the prosecuting attorney but stated that it was up to Alexandra whether she wished to file a motion for contempt.

Alexandra filed a motion for a contempt hearing later that day. The court issued a show cause order and set a hearing concurrent with the February 15 review hearing. On February 10, Alexandra filed a memorandum in support of holding Michael in contempt. She asked that Michael be required to account for each of the 34 guns. Alexandra also asked the court to allow her to cross examine Michael at the February 15 hearing.

On February 13, Michael filed a declaration describing his efforts to comply with the order to surrender weapons. He stated that, after the February 1 hearing, the Union County sheriff's office had agreed to accept the firearms.

4

Michael declared that his father had then driven all of his guns from Lane County to Union County and surrendered them. He declared that "all firearms listed in her [Alexandra's] declaration are surrendered except for one which was owned by and in the possession of Dylan Hillman." Clerk's Papers (CP) at 86. Michael further declared that he had no concealed pistol license and no dangerous weapons to surrender. He attached a receipt listing 32 guns received by the Union County sheriff's office.

At the hearing on February 15, Michael's attorney stated that she was appearing for Michael and he had surrendered all of his guns. Through counsel, Alexandra asserted that two of the guns from the 2014 inventory were not listed on Michael's receipts and there was no testimony or declaration accounting for these weapons. And, Alexandra argued, the court had no testimony or declarations as to weapons Michael had recently purchased, even though three of the guns Michael surrendered were not on the 2014 inventory and had thus been purchased since 2014. Michael's counsel responded that Alexandra asked him to surrender 34 guns and he had surrendered more than that.

The court found that Michael had complied with the order to surrender weapons. The court stated:

> He has made substantial efforts to turn in the guns that he has and I don't have any information that the 2014 list is accurate at this point in time. It's three years ago. I'm going to find that he's in compliance at this time, so I will enter an order to that effect...I will accept his declaration regarding the surrenders.

Verbatim Report of Proceedings (VRP) at 91. The written order states that Michael has filed a declaration of surrender and is in compliance with the order to surrender weapons.

5

DISCUSSION

Alexandra appeals the trial court's ruling that Michael complied with the order to surrender weapons. The issues on appeal concern the statutory provisions, enacted in 2014, to restrict access to firearms by persons subject to domestic violence protection orders. LAWS OF 2014, ch. 111. Under RCW 9.41.800(3), when the court issues a domestic violence protection order that meets certain statutory conditions, the court must also order the restrained person to surrender all firearms and other dangerous weapons:

> the court shall:
>
> (A) Require the party to surrender any firearm or other dangerous weapon;
> (B) Require the party to surrender a concealed pistol license issued under RCW 9.41.070;
> (C) Prohibit the party from obtaining or possessing a firearm or other dangerous weapon; and
> (D) Prohibit the party from obtaining or possessing a concealed pistol license.

RCW 91.41.800(3)(c)(ii). Possession of a firearm while subject to a qualifying domestic violence restraining order constitutes unlawful possession of a firearm in the second degree. RCW 9.41.040(2)(a).

A party ordered to surrender weapons must file "a proof of surrender and receipt form" within five days of the entry of the order. RCW 9.41.804. Pursuant to RCW 9.41.802, the administrative office of the courts (AOC) developed a proof of surrender form "used to document that a respondent has complied" with an order to surrender weapons. The form developed by the AOC states that the restrained person has been ordered to surrender "any and all firearms and other dangerous weapons" in his or her "possession or control," as well as "any

6

concealed pistol license." Form WPF All Cases 02-060, Proof of Surrender (rev. Jan. 2018).[2] The form requires the restrained person to certify, under penalty of perjury, that he or she has surrendered all weapons and attach a receipt. The AOC receipt form requires a detailed list of each item surrendered. Form WPF All Cases 02-065, Receipt for Surrendered Weapons and Concealed Pistol License (rev. Jan. 2018).[3] The sheriff or other authorized person must certify receipt of the weapons under penalty of perjury.

The AOC also developed a standard order to surrender weapons form. Form WPF All Cases 02-050, Order to Surrender Weapons (rev. Jan. 2018).[4] This form, which the trial court used in this case, orders the restrained person to immediately surrender "all firearms and other dangerous weapons in [his or her] possession or control." CP at 61. The order instructs the restrained person to take four steps:

> Step 1: **Immediately** turn in the weapons and CPL.
> Step 2: Get a receipt for the weapons and CPL from law enforcement or court designated person;
> Step 3: Complete the *Proof of Surrender* form and attach the receipt.
> Step 4: File the documents with the clerk of the court within 5 days.

Id. at 61-62.

The issue before us is whether the trial court erred in finding that Michael complied with the order to surrender his weapons. As an initial matter, the parties dispute the burden of proof. Alexandra asserts that the restrained person has the burden to surrender his weapons and convince the court that he has done so. In

---

[2] http://www.courts.wa.gov/forms/?fa=forms.contribute&formID=95.
[3] http://www.courts.wa.gov/forms/?fa=forms.contribute&formID=95.
[4] http://www.courts.wa.gov/forms/?fa=forms.contribute&formID=95.

a joint amicus brief, several friends of the court support this position.[5] Amici contend that perpetrators of domestic violence routinely fail to comply with orders to surrender weapons. They argue that, where the record creates a question as to whether an abuser has surrendered all of his guns, the court should require the restrained person to present evidence to resolve the discrepancy.

Michael contends the restrained person's only statutory obligation is to timely file a document stating that he has surrendered his weapons. His position is that, once the restrained person declares he has surrendered his weapons, the burden shifts to the plaintiff to prove that the declaration is false.

We agree with Alexandra. The statutory provisions do not expressly allocate the burden of proof. But, taken together, these provisions indicate that the restrained person has the burden to prove that they have surrendered all firearms and other dangerous weapons.

Under RCW 9.41.800(3), when the court issues an order to surrender weapons pursuant to a domestic violence restraining order, the restrained person must immediately surrender all firearms, other dangerous weapons, and any CPL. This is the primary obligation established by statute. The restrained person must also file a proof of surrender and receipt. RCW 9.41.804. This second requirement serves as evidence that the restrained person has complied with the order to surrender weapons. See RCW 9.41.802 (form serves to document compliance). By requiring the restrained person to file evidence of compliance, the statute assigns the burden of proof to the restrained person.

---

[5] Amici curiae are: Legal Voice, Northwest Justice Project, Washington State Coalition Against Domestic Violence, Alliance for Gun Responsibility Foundation, Coalition Ending Gender-Based Violence, and Seattle City Attorney's Office.

Nothing in the statutory scheme, however, indicates that a proof of surrender form is conclusive evidence of compliance or that filing such a form shifts the burden of proof. Such a reading would be contrary to both common sense and the purpose of the surrender weapons provision. See Dep't of Labor and Indus. v. Rowley, 185 Wn.2d 186, 204, 378 P.3d 139 (2016) (stating that, in civil matters, the burden of proof is allocated based on common sense and policy concerns) (citing 5 Karl B. Tegland, Washington Practice: Evidence Law and Practice § 301.2, at 193 (5th ed.2007)). The provisions of RCW 9.41.800-.804 reflect a legislative determination that it is in the public interest to prohibit persons subject to specific domestic violence restraining orders from possessing firearms and other dangerous weapons. In determining whether a person has complied with an order to surrender weapons, the issue is not whether the person has filed a proof of surrender form but whether the person has surrendered all of his or her weapons. A proof of surrender form provides evidence of compliance but does not, in itself, prove that the person has surrendered all of their weapons.

We conclude that the party ordered to surrender weapons has the burden to prove compliance. Because this is a civil matter, we apply the preponderance of the evidence standard. See Rowley, 185 Wn.2d at 208-09 (preponderance of the evidence generally applies in civil law). The proof of surrender form and receipt, which the party must file pursuant to RCW 9.41.804, serve as prima facie evidence that the party has surrendered his or her weapons. But where the record contains conflicting evidence, the court must weigh that evidence and determine whether the restrained party has met their burden of proof.

In this case, the trial court found that Michael had complied wih the order to surrender weapons. We review challenges to findings of fact for substantial evidence.[6] See, e.g., In re A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015); Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 73 P.3d 369 (2003). Evidence is substantial where it is "sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley, 149 Wn.2d at 879 (citing Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

Alexandra argues that the trial court erred in ruling that Michael was in compliance with the order to surrender weapons. She contends the trial court improperly considered Michael's "substantial efforts" in determining whether he had surrendered all of his weapons. VRP (2/15/17) at 91.

She is correct. In determining whether Michael was in compliance with the surrender weapons order, the factual question before the court was whether Michael had surrendered all of his firearms, other dangerous weapons, and any CPL. Michael's efforts to surrender weapons are not relevant to this determination. To the extent the trial court ruled that Michael was in compliance with the order to surrender weapons because he made efforts to comply, it was error.

Alexandra next argues that the trial court's ruling is error because the record does not support a finding that Michael surrendered all of his firearms.

---

[6] The parties generally appear to agree that our review in this case is for substantial evidence but they also argue briefly and unpersuasively that our review is de novo (see Brief of Appellant at 18, n.10) or for abuse of discretion (see Brief of Respondent at 30-31). We reject those arguments.

The parties agree that the evidence before the trial court consisted of: (1) Alexandra's declaration that, in 2014, Michael stored his guns at the Emerald Valley Armory; (2) the attached email from Emerald Valley Armory containing an inventory list of 34 guns; (3) Michael's January proof of surrender form stating that he had surrendered his firearms; (4) the attached receipt from the Union County sheriff's office listing three guns; (5) Michael's February declaration stating that he had surrendered his firearms; and (6) the attached receipt from the Union County sheriff's office listing 32 guns.[7]

The inventory from Emerald Valley Armory lists 34 guns by make, model, and serial number. Michael's February declaration references this inventory and states that "all firearms listed in [Alexandra's] declaration are surrendered except for one which was owned by and in the possession of Dylan Hillman." CP at 86. The January and February receipts from the Union County sheriff, taken together, list 35 guns that Michael surrendered by make, model, and serial number. Id. at 59, 88-91. Two of the guns on the Emerald Valley inventory, a Savage 10 serial number F400513 and an S&W model 28 serial number 100663, are not on the Union County receipts.

Michael's declaration expressly states that he has surrendered all of the guns on Alexandra's inventory except one that belonged to someone else. But

---

[7] We note that Michael did not use the AOC forms for his receipts or for his February proof of surrender. The trial court accepted Michael's documents, stating that there is no requirement that a restrained person use the AOC forms. While this is true, an alternate form must contain substantially the same information as the forms developed by the AOC. A valid proof of surrender must include a declaration that the restrained person has surrendered all firearms, other dangerous weapons, and any CPL and contain a declaration that the undersigned certifies under penalty of perjury that the declaration is true and correct. See WPF All Cases 02-060. A valid receipt must list and describe all surrendered items, identify the authorized receiving party, and contain a declaration that the undersigned certifies under penalty of perjury that the declaration is true and correct. See WPF All Cases 02-065.

11

the receipts Michael submitted fail to account for two of the guns on Alexandra's inventory. This evidence does not support a finding that Michael surrendered all of his firearms.

To argue against this result, Michael asserts that the trial court discounted the inventory from the Emerald Valley Armory because the evidence was not properly before the court. We reject this argument. Michael did not challenge the admissibility of the inventory below and specifically referenced the inventory in his own declaration. Michael may not challenge the admissibility of the inventory for the first time on appeal. RAP 2.5(a).

Michael also argues that Alexandra failed to adequately raise the discrepancy between the inventory and Michael's receipts below and may not raise the issue for the first time here. The argument is without merit. At the hearing on February 15, Alexandra asserted that Michael's receipts failed to account for two guns. She raised the argument below. In addition, the discrepancy in the evidence is visible on the face of the documents. It did not require argument.

At oral argument, Michael asserted that evidence supporting the trial court's finding could be found in Michael's declaration.[8] The argument rests on the final statement of Michael's February declaration: "I have no concealed pistol

---

[8] At oral argument, Michael argued we should leave the finding that he complied with the order undisturbed because it rests on the trial court's determination of credibility. But the record does not show that the trial court either heard testimony or made an explicit credibility determination. Moreover, even if the trial court considered credibility in weighing the parties' declarations, we nonetheless review its finding for substantial evidence. In re Marriage of Rideout, 150 Wn.2d 337, 351-52, 77 P.3d 1174 (2003).

license (it is expired) and no dangerous weapons to surrender." CP at 87. This statement does not support the trial court's finding.

Pursuant to RCW 9.41.800(3), Michael was ordered to surrender "all firearms and other dangerous weapons" as well as "any concealed pistol license." CP at 61. His declaration recounts at length his efforts to surrender his firearms and states that he surrendered all the firearms on Alexandra's list. The declaration concludes with Michael's statement that he had no concealed pistol license and no dangerous weapons. Michael's declaration tracks the statutory requirement to surrender three categories of items: firearms, other dangerous weapons, and concealed pistol licenses. His statements concerning "firearms" and "dangerous weapons" refer to two separate categories. But even if Michael's declaration that he had "no dangerous weapons" referred to firearms, the statement does not reconcile the discrepancy between his receipts and the armory list.

Michael had the burden to prove that he had surrendered all of his firearms and other dangerous weapons. He submitted a declaration stating that he had surrendered all of the guns on Alexandra's inventory. His receipts do not account for two of the guns on the inventory. On this record, we conclude that the trial court erred in finding that Michael had complied with the order to surrender weapons. The finding is not supported by substantial evidence. We reverse and remand for further proceedings.

The parties also raise arguments concerning the show cause hearing. They dispute whether the defendant in a contempt action may appear through counsel. At the hearing on February 15, the trial court acknowledged receipt of

13

Alexandra's motion for contempt and her memorandum on that issue. The court did not reach the contempt issue because it found Michael in compliance with the order to surrender weapons. The court did, however, state that, as in any other civil matter, a defendant in a contempt proceeding may appear through counsel.

Alexandra contends this was error. She asserts that unlike other civil proceedings, the defendant in a contempt proceeding must appear personally. App. Br. at 27. She relies on Burlingame v. Consolidated Mines and Smelting Co., Ltd., 106 Wn.2d 328, 335, 722 P.2d 67 (1986). But the issue in Burlingame was notice. Id. at 334-35. The Burlingame court did not address whether a contemnor may appear through counsel at a show cause hearing. We reject Alexandra's position as unsupported and, as a result, do not reach Michael's arguments that the show cause order in this case was insufficient to require his physical presence.

The court made no further ruling on contempt and, accordingly, we do not reach the issue here. The motion for contempt is before the trial court on remand.[9]

Reversed.

WE CONCUR:

Trickey, ACJ

Spearman, J.

Dwyer, J.

---

[9] Because it was raised at oral argument and may become an issue on remand, we note that a contemnor may assert, as an affirmative defense, that he was unable to comply or that failure to comply is based on the Fifth Amendment right against self-incrimination. King v. Dep't of Social and Health Services, 110 Wn.2d 793, 804-05, 756 P.2d 1303 (1988). In such a case, the contemnor has the burden to produce evidence as to the claimed affirmative defense and the burden to persuade the court that the evidence is credible. Id.