

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37833-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUGAR RAY HENDERSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Cougar Henderson appeals the trial court's denial of his

CrR 7.8(b) motion, which sought relief from a second degree rape conviction on the basis

of an alleged error in excluding one of his proposed trial exhibits. We agree with the trial

court that in light of undisputed testimony that established the same facts, Mr. Henderson

cannot demonstrate prejudice. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In January 2018, the State charged Mr. Henderson with rape in the second degree

of E.J.,[1] a former high school acquaintance. The charges arose after E.J. reported to

police that Mr. Henderson raped her in his car while parked along a country road in

---

[1] To protect the privacy interests of E.J., we use her initials throughout this opinion. Gen. Orders of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov /appellatetrial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

September 2013 when she was 16 years old.  Mr. Henderson admitted to meeting E.J. that night to "mak[e] out," but testified that nothing more than kissing, groping, and cuddling occurred.  Report of Proceedings (RP)[2] at 235.

The case proceeded to trial in May 2018, and Mr. Henderson was found guilty. He timely appealed.  This court affirmed in an opinion filed on April 7, 2020.  *See State v. Henderson*, No. 36305-8-III (Wash. Ct. App. Apr. 7, 2020) (unpublished), https://www .courts.wa.gov/opinions/pdf/363058_unp.pdf.

In the meantime, in March 2020, Mr. Henderson filed a pro se CrR 7.8 motion for relief from judgment in the trial court.  He argued that the trial court's refusal to admit proposed defense exhibit 3 during his trial lawyer's cross-examination of E.J. was error and that he was entitled to a new trial.

*Relevant trial proceedings*

Mr. Henderson testified at trial that proposed defense exhibit 3 was his screen capture, from his cell phone, of a Facebook messaging conversation that took place between him and E.J.  The proposed exhibit, a one-page document, was first discussed at trial during Mr. Henderson's lawyer's cross-examination of E.J.  Defense counsel asked E.J. if she had her cell phone with her on the night she was raped, and she said she did.

---

[2] Citations to the report of proceedings are to the volume containing pretrial motions and the trial.

Defense counsel asked for his proposed exhibit 3 to be marked, and the questioning

continued:

Q.  And after that evening did your parents take your cell phone away?

A.  Yes.

Q.  Did you then have communication with Cougar Henderson about that?

A.  Yes.

Q.  And I'm putting in front of you a document that's been marked for purposes of identification as defendants Exhibit 3. Do you recognize that?

A.  Yes.

Q.  That's a Facebook message between you and Cougar?

A.  Yes.

Q.  And the first line is: "My phone got taken away."

A.  Yes.

[PROSECUTOR]: Your Honor, I'll object. I believe this is their—if there is an attempt, there has been no attempt to admit this document. There is a foundational issue because Ms. [E.J.] is not the custodial—it's hearsay. It is not a document.

THE COURT: Well, it hasn't been offered yet. Have you offered it?

[DEFENSE COUNSEL]: No, I haven't. I'm about to and I'm trying to get her to identify it as her communication as a matter of foundation.

THE COURT: Go ahead.

[DEFENSE COUNSEL]:

Q.  So you communicate with Cougar by saying, "My phone got taken away," correct?

A.  Yes.

Q.  And he responds by saying, "By whom? What of it?"

Is that correct?

3

[PROSECUTOR]: The State objects on the grounds of hearsay. The defendant is trying to introduce his own statements through a third party who is not the party opponent.

THE COURT: Overruled.

[DEFENSE COUNSEL]: You may answer.

A. Yes, he says that, yes, he says that.

Q. And you reply: "Ha, ha. My parents, and it's cuz I ignored one of their four phone calls last night. Oh, well, it was worth it."

That's your language to him, correct?

A. Yes.

Q. And your remarks, "Oh, well, it was worth it," were referring to the night you have been describing here today, correct?

A. I'm assuming so.

Q. Wouldn't have been any other night, would it?

A. I don't believe so. Even though the date is four days past the event and I mentioned last night.

Q. Yes. And we'll talk about that date some time later, but you are referring to the events with Cougar, because when you say, "cause it was worth it."

A. I am assuming so. I don't remember these messages, but, yes.

[Q.] We'll offer, Your Honor.

[PROSECUTOR]: Again, the State will move that there is not adequate foundation, because [E.J.] isn't a custodian of the record for Facebook, that she would be able to testify that this document as presented has not been modified in any way.

THE COURT: I'll sustain the objection.

[DEFENSE COUNSEL]:

Q. And did you have other Facebook and electronic communications with Cougar Henderson after this one which was on September 25, 2013?

A. Yes, there is more to the conversation.

4

RP at 172-75.

During the prosecutor's redirect examination of E.J., he elicited her testimony that the proposed defense exhibit 3 did not reflect her entire conversation with Mr. Henderson. When she could not recall what was missing, the prosecutor asked, "Would it help if I showed you? Did you prepare a printout of the Facebook conversation?" RP at 177. The prosecutor was then permitted by the court to approach her with a document and E.J. testified, "Yes. I printed that." RP at 177. Asked by the prosecutor to look at her printout's third page to see if it refreshed her recollection, E.J. did, and testified that she recalled having sent a message to Mr. Henderson that said she "wanted to forgive him too, and . . . wanted to reach out but . . . was scared that he was going to reject me." RP at 177.

On recross, defense counsel returned again to E.J.'s "it was worth it" message:

Q. Back to the Facebook messages, the message about parents taking the telephone away?

A. Yeah, my cell phone.

Q. Your reply was: "Because it was worth it."

A. Sure.

Q. That was September 25, 2013?

A. Yes.

Q. And that is a complete message is it not?

A. Yes.

RP at 178.  Defense counsel then asked E.J. about the additional messages reflected on the document that she had printed out and was using to refresh her recollection.  Defense counsel did not offer E.J.'s print out as an exhibit.

Mr. Henderson testified in the defense case.  Toward the end of his testimony, defense counsel took the opportunity to have Mr. Henderson look at defendant's proposed exhibit 3, stating:

> Q.     . . . There has already been some discussion of this.  This is what?
>
> A.     This is a screen capture of a Facebook messaging conversation that took place between [E.J.] and myself.
>
> Q.     And on whose screen did that appear?
>
> A.     My cell phone screen.

RP at 256.  After a question that drew an objection, defense counsel continued:

> Q.     But the message from [E.J.] that she has testified to saying "Cuz it was worth it," was September 25, 2014, correct?
>
> A.     Yes.  That message came from [E.J.] on September 25, 2013, not '14 [sic].
>
> Q.     2013.  And referred to the night before?
>
> A.     Correct.  She said the, quote: "Well, it was worth it" referring to the night before.

RP at 257.

In closing argument, defense counsel told jurors:

> It's theoretically possible that you could actually conclude that these two individuals did have sexual intercourse, but it was not by forcible compulsion.  I submit to you that the evidence could support that, but the overwhelming evidence is that there was no sexual intercourse at all.  The behavior of [E.J.] the morning after, when she sent the Facebook post, that

> has been read again and again where she said: "My folks took my cell phone away because I didn't return calls last night. But it was worth it." Well, what was worth it?
>
> She testified that she was referring to the events of that evening with Cougar Henderson.

RP at 309.

*Proceedings on the CrR 7.8 motion*

Mr. Henderson's pro se motion argued that his proposed exhibit 3 was adequately authenticated by E.J., the State's objection was unfounded, and it should not have been sustained. He argued he was entitled to relief under CrR 7.8 on the basis of surprise, misconduct, and arbitrary action by the State. He contended he had been prejudiced by the exclusion of the exculpatory evidence.

The State argued in opposition that the exhibit was hearsay for which no exception was identified. Its principal argument, however, was that the defense was able to cross-examine E.J. at length about the content of the text messages and an erroneous evidentiary ruling is reversible error only if it results in prejudice.

The trial court ruled on the motion without oral argument, agreeing with the State that "regardless of whether the Defendant's proposed Trial Exhibit No. 3 was admitted, counsel for the defense was able to cross-examine the complaining witness at length regarding the contents of the subject text messages, and admission thereof would have been unnecessarily repetitive." Clerk's Papers (CP) at 86. For this "and other reasons set forth in the State's Response to Defendant's CR 7.8 Motion," it denied the motion. *Id.*

Mr. Henderson appeals.

ANALYSIS

Mr. Henderson, now represented by counsel, argues that the trial court erred in denying the CrR 7.8(b) motion and had earlier erred in sustaining the State's objection to proposed defense exhibit 3. He contends that his lawyer's examination of E.J. about the text message exchange did not obviate prejudice because "the jury was likely to have interpreted sustaining the objection as precluding consideration of the contents of the proffered exhibit." Br. of Appellant at 13. Mr. Henderson also argues that the ruling on the motion deprived him of his constitutional right to present a defense.

The State responds with a threshold argument that Mr. Henderson is complaining of an alleged mistake of law, which needed to be raised on direct appeal, not under CrR 7.8(b). It also contends the trial court's evidentiary ruling was not an abuse of discretion, did not deprive Mr. Henderson of the ability to present a defense, and was harmless. It characterizes the defense claim that the jury could have been confused into disregarding all evidence of the text message as unsupported by the record, speculative, and meritless.

For the following reasons, we decline to reject the appeal on the basis that CrR 7.8(b) did not apply. We agree with the trial court that any error in failing to admit proposed defense exhibit 3 was harmless.

I.   BECAUSE MR. HENDERSON COULD HAVE CHALLENGED THE EVIDENTIARY RULING IN A PERSONAL RESTRAINT PETITION (PRP), WE DECLINE TO REJECT HIS ARGUMENTS AS IMPROPERLY RAISED UNDER CrR 7.8(b)

Under CrR 7.8(b), the court may relieve a party from a final judgment for the following reasons:

> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
> (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5;
> (3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
> (4) The judgment is void; or
> (5) Any other reason justifying relief from the operation of the judgment.

In the trial court, Mr. Henderson appeared to argue he was entitled to relief under subsections (b)(1) (surprise), (b)(3) (prosecutorial and judicial misconduct in the positions taken on the objection), and (b)(5) (general arbitrary action by forgoing the rules of evidence). On appeal, Mr. Henderson relies solely on CrR 7.8(b)(5).

Despite the apparent breadth of so-called "catchall" section CrR 7.8(b)(5), it does not authorize relief for mistakes of law. To do so would render subsection (b)(1) meaningless. *State v. Dennis*, 67 Wn. App. 863, 866, 840 P.2d 909 (1992); *and see, e.g.*, *State v. Robinson*, 153 Wn.2d 689, 695 & n.5, 107 P.3d 90 (2005) ("Relief for errors of law must be sought under CrR 7.5 (motion for a new trial) by an appeal or a PRP."); *State v. Dorenbos*, 113 Wn. App. 494, 499, 60 P.3d 1213 (2002) ("Mistakes of law may not be corrected by a motion for relief from judgment under CrR 7.8(b) but must be challenged

9

on direct appeal."); *State v. Keller*, 32 Wn. App. 135, 140, 647 P.2d 35 (1982) ("Errors of law are not correctable through CR 60(b); rather, direct appeal is the proper means of remedying legal errors."); *Burlingame v. Consol. Mines & Smelting Co.*, 106 Wn.2d 328, 336, 722 P.2d 67 (1986) (discussing CR 60); *In re Marriage of Tang*, 57 Wn. App. 648, 655-56, 789 P.2d 118 (1990) (discussing CR 60); *and see* 4A ELIZABETH A. TURNER, WASHINGTON PRACTICE; RULES PRACTICE, CrR 7.8, cmt. 3 & 4, at 602-04 (8th ed. 2020) (noting limitation and tracing CrR 7.8's adaptation from CR 60(b)).

Anticipating this argument, Mr. Henderson argues that we are not bound by decisions of other divisions of the Court of Appeals. He does not address the Supreme Court's decision in *Robinson*, however. He also attempts to distinguish his case as asserting a violation of his constitutional right to present a defense and due process right to a fair trial. But those, too, assert legal error.

We note, however, that under CrR 7.8(c) a trial court "shall" transfer a CrR 7.8 motion seeking vacation of a judgment to this court for consideration as a PRP if the motion is not time-barred by RCW 10.73.090 and the defendant has not made a substantial showing of a right to relief or that a factual hearing is required. Mr. Henderson's motion was not time-barred, did not require a factual hearing, and the trial court was not persuaded it had merit. If it had been transferred to this court for consideration as a PRP, we would have reviewed Mr. Henderson's challenge to the trial

10

court's evidentiary ruling. Given these circumstances, we decline to reject the appeal on the basis that CrR 7.8(b) did not apply.

II.    ANY ERROR BY THE TRIAL COURT WAS HARMLESS

In this case, it is easiest to affirm the trial court on the basis that the excluded exhibit was cumulative of undisputed testimony and even if the trial court erred or abused its discretion, the error was harmless.

It is well settled that in a collateral attack on a conviction, a defendant must show that he or she was prejudiced by the alleged error of the trial court. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 826, 650 P.2d 1103 (1982). In a collateral attack on a conviction, "appellate courts decline to take up a claimed constitutional error where the petitioner fails to demonstrate 'that the alleged errors gives rise to actual prejudice.'" *State v. Buckman*, 190 Wn.2d 51, 61, 409 P.3d 193 (2018) (quoting *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990)).

E.J. repeatedly acknowledged that the text messaging occurred, and defense counsel had Mr. Henderson recount the communications as well. In his closing argument, defense counsel aptly described the evidence of the text exchange as "the Facebook post[ ] that has been read again and again." RP at 309.

Mr. Henderson's effort to discount the undisputed testimony is unpersuasive. He acknowledges that juries are presumed to follow a court's instructions. Br. of Appellant at 22 (citing *State v. Hopson*, 113 Wn.2d 273, 287, 778 P.2d 1014 (1989)). And the jury

11

was instructed that "[t]he evidence that you are to consider during your deliberations consists of *the testimony that you have heard from witnesses*, stipulations and the exhibits that I have admitted during the trial." RP at 291 (emphasis added).

After defense counsel offered proposed defense exhibit 3, the trial court merely sustained the objection. It later instructed jurors that "if I have asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching your verdict," RP at 292, but it had never asked jurors to disregard the testimony about the text exchange. In sustaining a discrete objection, a trial court is not required to explain to jurors that its ruling does not affect related, unobjected-to evidence. We agree with the State that there is no merit to Mr. Henderson's argument that jurors would have disregarded undisputed testimony after the trial court sustained the objection to proposed defense exhibit 3.

Finally, Mr. Henderson argues that a jury inquiry during its deliberations for a copy of "[E.J.]'s testimony for clarification, and cross-examination" may support a conclusion that he was prejudiced by an irregularity. Br. of Appellant at 23, App. at 1 (With the concurrence of both parties, the trial court responded, "Testimony will not be repeated. You must rely upon your notes and collective memories." CP at 133.). Yet the jury's inquiry suggests that jurors believed they *could* ask to review E.J.'s cross-examination, not that they believed they were directed to disregard it.

The trial court reasonably denied Mr. Henderson's CrR 7.8(b) motion on the basis that given the undisputed testimony presented about the text message, Mr. Henderson could not demonstrate prejudice.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.